UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-300 (WMW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **GOVERNMENT'S POSITION ON** |
| | ) **SENTENCING** |
| DANIEL GEORGE FISHER, | ) ) |
| Defendant. | ) |

The United States, by its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Angela M. Munoz-Kaphing, Assistant United States Attorney, and Olimpia E. Michel, Trial Attorney, hereby submits its position with respect to the sentencing of Defendant Daniel George Fisher.  For the reasons set forth below, the United States believes that a sentence at the top of the applicable Guideline range is appropriate.  The United States also asks the Court to sentence the Defendant to a 3-year term of Supervised Release.  Such a sentence is sufficient, but not greater than necessary, to comply with the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation.

I.   FACTUAL BACKGROUND

The Tawfiq Islamic Center is a non-profit organization that was founded in 2004 in Minneapolis, Minnesota.  *See* Presentence Investigation Report ("PSR") ¶ 6.  The Center was established to serve members of the Oromo Muslim community who left Ethiopia and began resettling in the Minneapolis area in the 1990s.  PSR ¶ 6.  The Center provides

religious services and serves as a gathering and worship space for members of the community.  PSR ¶ 6.  The Center also offers social and educational services, including, for example, assistance in completing job and rental applications, assistance in obtaining medical benefits, and assistance in finding other need-based resources.

In 2014, the Center purchased a building located at 2400 Minnehaha Avenue in Minneapolis, Minnesota as part of an expansion plan, and construction of the new location began shortly thereafter.  PSR ¶ 6.  Although construction and renovation projects have been ongoing from 2014 through the present day, members are actively using the Center's Minnehaha Avenue location for Friday Prayer, for marriage and other celebrations, for counseling services, and for other religious and educational purposes.  Members of the Center's leadership also have offices at this location.

The Defendant, Daniel George Fisher, previously lived in the same neighborhood where the Center's new building is located.  PSR ¶ 13.  The Defendant was angry that the Center selected Minnehaha Avenue for its new location and wanted the Center to build somewhere else.  PSR ¶¶ 9, 13-14.

On or about September 30, 2015, the Defendant acted on his anger and sent the Center an anonymous handwritten letter in which he threatened to "blow up your building with all you immigrants in it."  PSR ¶ 7.  The Defendant's threats also included profanities, racial and ethnic slurs, and other derogatory commentary based on his anti-Muslim animus.  PSR ¶ 7.  The Defendant sent the letter via U.S. mail, and used a false return address in order to avoid being caught.  PSR ¶¶ 8-9.

## II.   ARGUMENT

### A.  The Guidelines Range

The Government submits that the PSR issued on January 30, 2017, correctly calculates the applicable advisory Guideline range.  The PSR calculates an adjusted base offense level of 13 and a criminal history category of I, with a resulting advisory Guideline range of 12-18 months.  The Government asks the Court to adopt the PSR's Guideline calculations as its own.

### B.  The 18 U.S.C. 3553(a) Sentencing Factors

The Government recommends a sentence at the top of the applicable Guidelines range.  A full consideration of the factors set forth in Section 3553(a) compels the Government to seek this sentence, including, in particular, the nature and circumstances of the underlying offense, and the need to afford adequate deterrence.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence.  552 U.S. at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors").

The District Court may not assume that the Guidelines range is reasonable, but instead "must make an individualized assessment based on the facts presented."  *Gall v.*

*United States*, 552 U.S. at 50. If the Court determines that a sentence outside of the Guidelines is called for, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. Section 3553(a) requires the Court to analyze a number of factors, including, "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### 1. The nature and circumstances of the offense.

The Defendant committed a serious offense that is deserving of an appropriately serious punishment. This is not simply an impulsive action that the Defendant can blame on an alcohol or a drug binge. As the Defendant himself explained, he was angry with all Muslims and specifically angry with the members of the Tawfiq Islamic Center because they were constructing a new center in the Defendant's old neighborhood. PSR ¶ 13. The Defendant then composed a hateful letter that threatened to "blow up your building with all you immigrants in it" and mailed it to the Tawfiq Islamic Center. PSR ¶ 7. The Defendant intended for his letter to scare the Muslim community members so that they would relocate and move out of "his" neighborhood. PSR ¶¶ 13-14. He took additional steps to conceal his identity by not signing the letter and by using a false return address. PSR ¶ 8.

The Defendant's statement that he "was never going to hurt anyone," does not mitigate his behavior. PSR ¶¶ 13-14. The threat of violence is in and of itself the crime.

The harm and hurt caused by the Defendant's crime started the moment that the Center's leadership read his threatening letter. The harm and hurt continued when the Center's leadership had to share the Defendant's hateful letter with its membership to alert them of the threat and when the Center's leadership ultimately purchased a security system for the Center. The Center's leadership purchased and installed the security system on an expedited basis due to the Defendant's threat. There is little doubt that the members of the Tawfiq Islamic Center will feel the effects of the Defendant's actions for some time, as they may not feel safe in their place of worship. The Defendant's conduct is serious and merits an appropriately serious punishment.

### 2. The history and characteristics of the Defendant.

The PSR's description of the Defendant's personal history reveals that the Defendant was raised in a healthy and loving home by his adoptive parents. PSR ¶¶ 36-37. The Defendant graduated high school, was gainfully employed for approximately two decades following graduation, was in a relationship that resulted in the birth of his daughter, and had no criminal conduct during this time. PSR ¶ 38.

The Defendant's issues with drug abuse and homelessness appear to have started in or around 2003 when the Defendant, at the age of 44, relocated to Chicago, Illinois and ultimately to Minneapolis, Minnesota. PSR ¶¶ 40-41. The Defendant's criminal history is limited to non-violent offenses. His criminal convictions and pending charges are all misdemeanors and all occurred between 2002 and present. PSR ¶¶ 30-35. The Defendant promptly acknowledged his guilt in this matter by confessing and entering a guilty plea to a one-count information. (Dkt. No. 15).

While the Defendant may have been struggling with the myriad of issues associated with being homeless when he committed the instant offense, this circumstance does not explain or excuse his conduct here. The record is clear that the Defendant committed the instant offense with a clear intent – to scare the Tawfiq Islamic Center and cause them to relocate, thereby obstructing their free exercise of religious beliefs.

The text of the letter clearly reflects the Defendant's strong anti-Muslim animus. He describes Muslims using hateful, disparaging language. During his interview with federal agents, the Defendant explained how angry he was at Muslims and how this anger drove him to threaten the Center's members. The fact that hatred fueled his crime is part of the Defendant's history and characteristics that supports a sentence at the top of the applicable Guideline range.

The Sentencing Guidelines appropriately capture the Defendant's limited criminal history and give him credit for his acceptance of responsibility. The history and characteristics of the Defendant do not provide grounds for varying or departing from the Guideline range in this matter.

> **3. The need for the sentence to afford adequate deterrence to criminal conduct, and the need for the sentence imposed to protect the public from future crimes of this Defendant.**

In this case, there is a need for both individualized and general deterrence. Individualized deterrence is that which discourages a defendant from ever committing such a crime again. A significant sentence is also important as a general deterrent. General deterrence is the public response necessary to deter other people from committing similar crimes. The Eighth Circuit Court of Appeals has stated, "Congress specifically made

general deterrence an appropriate consideration . . . and we have described it as 'one of the key purposes of sentencing.'" *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).  A sentence at the high end of the Guidelines range sends a message to other individuals, and this Defendant in particular, that they risk significant federal penalties if they make threats of violence against communities based on their religion or where they worship.  Further, taking action to target religious communities on the basis of their religion will be punished, even if the person subsequently denies any intention of committing the threatened violent acts. Defendant Fisher has already committed a federal crime by acting upon his religious intolerance.  A considerable sentence at the high end of the range would deter him from committing other hate-motivated acts.

        **4. The kinds of sentences available and the Sentencing Guidelines and related policy statements.**

It is axiomatic that the sentence imposed should be sufficient, but not greater than necessary to comply with the purposes of sentencing.  There are compelling reasons here to impose a substantial sentence, as described herein.  A sentence at the top of the Guidelines range satisfies the purposes of sentencing.

### III.  Conclusion

For the reasons set forth above, the United States respectfully asks the Court to sentence the Defendant to a term of imprisonment at the top of the Guidelines range.  The

requested sentence is commensurate with the Defendant's criminal conduct and consistent with the Section 3553(a) factors. Most importantly, under all the facts and circumstances of this case, it is also fair and just.

Dated: February 13, 2017

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*s/ Angela M. Munoz-Kaphing*

BY: ANGELA M. MUNOZ-KAPHING
Assistant U.S. Attorney
Attorney ID No. 389207

OLIMPIA E. MICHEL
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Attorney ID No. 4358321 (NY)